IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHARLEY (CHARLIE) MCKINNEY and
CARLA MCKINNEY                                                                                  PLAINTIFFS

v.                                                                                  CIVIL CASE NO. 1:14-cv-066-NBB-SAA

LINE CONSTRUCTION BENEFIT
FUND d/b/a LINECO; and
L.E. MYERS CO. d/b/a MYR GROUP                                                      DEFENDANTS

MEMORANDUM OPINION

Came to be heard this day the motions for summary judgment of defendants Line Construction Benefit Fund ("Lineco") and The L.E. Myers Co. ("L.E. Myers"). Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

Charley McKinney is an electrician and member of the International Brotherhood of Electrical Workers ("IBEW") who has worked around the country seasonally as a "line man" installing power poles for approximately thirty years. Unions such as the IBEW help organize and promote contract employment positions for its members. Defendant L.E. Myers is a utility contractor who employs IBEW members. L.E. Myers periodically hired Mr. McKinney to work on their utility projects throughout his career. From August 2012 to April 2013, Mr. McKinney worked under contract for L.E. Myers in West Virginia. On April 19, 2013, he requested leave and received permission to travel home to Mississippi for the weekend. During his return trip on April 21, Mr. McKinney suffered extensive injuries in an automobile accident in Tishomingo County, the severity of which caused him to incur medical bills in excess of $270,000.00.

The plaintiff's accident and impending medical bills necessitated extensive coverage from his health plan, the implementation of which requires the participation of his union and his employer. The relationship L.E. Myers has with IBEW union contract employees is governed by a collective bargaining agreement ("CBA"). The CBA requires L.E. Myers to pay an additional sum above Mr. McKinney's compensation to the IBEW in order to fund health benefits. The IBEW's health benefits provider is defendant Lineco. IBEW pays this sum to Lineco to administer the health benefits for the IBEW plan participants. Mr. McKinney was a participant under this plan.

Lineco is a multiemployer health plan subject to the Employee Retirement Income Security Act of 1947, commonly known as ERISA. Lineco provides coverage for certain health benefits to its members with over 38,000 participants working for over 400 employers. When a participant such as Mr. McKinney makes a claim, that claim is administered according to the terms set forth in the Line Construction Benefit Fund Plan of Benefits ("the plan"). Within the plan is a subrogation agreement which requires the participant, in the event of a claim, to state their willingness to reimburse the plan for paid medical expenses if a third party is responsible for the incident which necessitated the expenses. Lineco's plan required Mr. McKinney to sign a subrogation agreement in the event of an accident, which he did on June 19, 2013.
The signed subrogation agreement was received by Lineco on June 27, 2013. All medical expense claims made by Mr. McKinney between the date of the accident and the date of receipt of the subrogation agreement by Lineco were initially denied.

Mr. McKinney, through counsel, wrote to Lineco stating his intention to file a workers compensation claim on June 27, 2013.[1] Lineco informed Mr. McKinney and counsel that any pending workers' compensation claims would stall Lineco's payment of health claims, as stated

---

[1] Lineco also received Mr. McKinney's signed subrogation agreement on June 27, 2013.

in a subsequent clause in the plan. The plan states, "[n]o payment shall be made under this plan in any event with respect to the charges listed below . . . if this plan [determines]: . . . [c]harges [were] incurred as the result of any accidental bodily injury . . . for which benefits are or <u>may be payable in whole or in part under any Workers' Compensation Law</u>. . . ."

Mr. McKinney insisted on filing a workers compensation claim, and Lineco abstained from paying Mr. McKinney's claims based on the workers' compensation limitation in the plan. On September 9, 2013, Lineco received notice from Mr. McKinney's counsel stating Mr. McKinney was no longer seeking a workers compensation claim. That month, Lineco paid all of Mr. McKinney's medical claims, including the claims previously denied.

Lineco continued Mr. McKinney's medical coverage under the plan until October 1, 2014, at which time Lineco supplied Mr. McKinney with a COBRA notification, making him aware of his right to continue coverage. Mr. McKinney elected to continue coverage under COBRA self-pay.

On June 19, 2014, Mr. McKinney became aware of an L.E. Myers internal memorandum which listed his termination date as April 19, 2013. April 19, 2013, was the last day Mr. McKinney physically worked for L.E Myers. Mr. McKinney takes issue with the notation of his termination being the last day he worked and not a date after his debilitating accident. When deposed, Mr. McKinney stated he did not "know why they would do that unless [L.E. Myers] was trying to steal something from me. . . ." However, Mr. McKinney stated multiple times in deposition that he did not lose any benefit, nor is he aware of any loss deriving from the date of termination being April 19, 2013.

Mr. McKinney and his wife Carla McKinney filed suit in this court against defendant L.E. Myers and Lineco on April 22, 2014. Throughout the litigation, plaintiffs have brought

forth claims, amended those claims, and abandoned others. Against defendant L.E. Myers, the plaintiffs ultimately allege retaliatory discharge, interference with a protected right, and intentional infliction of emotional distress resulting from the knowledge of the April 19th termination date. Against defendant Lineco, plaintiffs ultimately allege a general violation of ERISA.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit," and any facts which would be irrelevant to the potential outcome are immaterial. *Id.* If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

In reviewing the evidence, this court must draw all reasonable inferences in favor of the nonmoving party and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000). In doing so, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151. The plaintiffs' "burden is not satisfied with 'some metaphysical doubt

as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1975 (5th Cir. 1994) (citations omitted).

Analysis

Plaintiffs' initial cause of action against L.E. Myers is retaliatory discharge. This claim is only available to the plaintiff through application of Illinois state law. The state of Mississippi does recognize a cause of action for retaliatory discharge.

To show Illinois law applies, the plaintiff relies on *D.J. Masonry Co. v. The Ind. Comm.*, to propose, "the place where the last act necessary to complete an employment contract occurred is the venue where the court has jurisdiction. 295 Ill., App. 3d 924 (Ill. App. 1 Dist. 1998). Defendant L.E. Myers' parent company, MYR Group, has its principal place of business in Illinois. To be a contract employee for L.E. Myers, Mr. McKinney was required to complete a drug test and fill out employment paperwork. Plaintiffs "presume" Mr. McKinney's employment paperwork and drug test results were sent by L.E. Myers to their parent company, MYR Group in Illinois, and therefore the last act necessary to complete the employment contract occurred in Illinois and Illinois workers' compensation law should apply.

Notwithstanding the merits of whether Illinois law could be applied, the facts herein fail to meet the standard of a *primia facie* case of retaliatory discharge. Plaintiffs allege a reasonable jury could conclude that defendant L.E. Myers "retroactively terminated" Mr. McKinney because he intended to file a workers' compensation claim under the Illinois Workers' Compensation Act. The elements of retaliatory discharge under Illinois law require the plaintiff to prove, *inter alia*: he exercised a right granted by Illinois Workers' Compensation Act, and was discharged from employment for exercising that right. *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697 (1998). To exercise a right granted to Mr. McKinney

by the Illinois Workers' Compensation Act, Mr. McKinney would have had to file a workers' compensation claim in Illinois. *Id*. However, the plaintiff never filed a workers' compensation claim in the state of Illinois and therefore, never exercised a right granted by the Illinois Workers' Compensation Act. This fact is not in dispute. Therefore, the plaintiffs' claim of retaliatory discharge against defendant L.E. Myers must fails as a matter of law.

Next, Mr. McKinney alleges L.E. Myers wrongfully discharged him under Mississippi law. This claim was not brought forth until the plaintiff's filed their response to both defendants' motions for summary judgment. As affirmed in, *Fisher v. Metro Life Ins. Co.*, a claim first raised in response to the defendants' motions for summary judgment is not properly before the court. 895 F.2d 1073, 1078 (5th Cir. 1990). This claim is not properly before the court and should be dismissed as a matter of law. Furthermore, the wrongful discharge claim fails to allege any redressable injury or damages when coupled with Mr. McKinney's immediate inability to perform physical labor.

Plaintiffs' also charge defendant L.E. Myers with the statutory cause of interference with a protected right. *See* 29 U.S.C. § 1140. The statute reads, "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan. . . ." *Id*. The plaintiffs theorize, because L.E. Myers "retroactively discharged Mr. McKinney without legal cause or justification after learning of his car accident" L.E. Myers purpose must have been to interfere with a right Mr. McKinney was legally entitled to pursuant to his health plan administer by Lineco. However, the plaintiff, in pleadings and motions, fail to allege what that abridged right actually is. Mr. McKinney's health insurance coverage persisted subsequent to the "retroactive discharge" and furthermore Mr. McKinney's medical claims were paid by the plan administrator

Lineco. In response to the summary judgment motions filed by the defendants, the plaintiffs omit analysis on this claim of interference with a protected right and therefore abandoned it. "A party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). The claim of interference with a protected right has been abandoned by the plaintiffs and therefore will be dismissed as a matter of law.

Plaintiffs conclusively allege in their amended complaint that L.E. Myers' action of "retroactively" dating Mr. McKinney's termination on internal memorandum while Mr. McKinney was disabled, is "evidence sufficient to present a jury issue as to intentional infliction of emotional distress" and that this action shows that defendant L.E. Myers "did not care about its 'former employee's medical condition or financial condition."

In order to recover damages for intentional infliction of emotional distress ("IIED") the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 967, 982 (N.D. Miss. 1996). "Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. *Id*. "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (citations omitted).

Plaintiffs make no showing of intentional conduct by the defendant L.E. Myers which would make the dating of Mr. McKinney's termination, as typed into his records, anything other than a purely ministerial function. The plaintiff stated in deposition that his "whole reason [for being] here . . . is that they said they fired me on that date," in reference to the April 19th

termination date. However, the standard for intentional infliction of emotional distress is not based on the plaintiff's subjective understanding. To sustain a claim for IIED, some intentional act on part of the defendant must be outrageous or indecent, not only to the understanding of the intended, but also to civilized society. There is no such act present here. Furthermore, L.E. Myers only casually mentioned Mr. McKinney's termination date to counsel three months after Mr. McKinney's accident while responding to a request for an explanation of a provisions in the CBA. Defendant L.E Myers' response could hardly be construed as an intentional, intolerable act. Additionally, the internal memorandum stating Mr. McKinney's termination date noted his eligibility for re-hire. The court finds that no reasonable juror could conclude the April 19th termination date, which had no effect on the plaintiff's attainment of any benefit, could be considered extreme or outrageous conduct sufficient to warrant recovery under the claim of intentional infliction of emotional distress. As such, this claim must fail as a matter of law.

Against defendant Lineco, plaintiffs' amended complaint alleges the plan's administrator's breached their fiduciary duty and failed to provide a timely COBRA notice. As stated *supra*, Lineco was Mr. McKinney's health benefit coverage provider through contract with Mr. McKinney's union, IBEW. However, in response to Lineco's motion for summary judgment, plaintiffs omit any responsive argument on these issues and have again abandoned their claims. An opposing party in a proper response to a motion for summary judgment must submit "more than naked denials*." Douglas v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1529, (5th Cir. 1996) (en banc). "A party who inadequately briefs an issue is considered to have abandoned the claim*." Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Plaintiffs have abandoned these two claims and as such, Lineco is entitled to summary judgment on the claims of breach of a fiduciary duty and failure to provide a timely COBRA notice.

In place of a response to defendants' motion for summary judgment on these issues, plaintiff lodges a new theory of recovery for a general accusation against Lineco for violating ERISA. Plaintiffs state it "was not legally correct" and an "abuse of discretion" for Lineco to require a written notice stating plaintiffs did not intend to file a workers' compensation claim.

As stated previously, Lineco's health plan requires that, "[n]o payment shall be made under this plan in any event with respect to the charges listed below . . . if this plan [determines]: . . . [c]harges [were] incurred as the result of any accidental bodily injury . . . for which benefits are or <u>may be</u> <u>payable in whole or in part under any Workers' Compensation Law</u>. . . ." The plaintiffs' communicated to Lineco with verbal and written confirmation that they were seeking recovery through workers' compensation. Defendant Lineco's representative responded with notice that such action would delay payment of plaintiff's medical claims. When plaintiffs finally supplied notice that they would not seek workers' compensation recovery, Lineco paid all of Mr. McKinney's claims.

When evaluating the "factual and legal determinations of an ERISA administrator, the modified abuse of discretion standard applies. . . ." *See Firestone Tire & Rubber Co. Bruch*, 489 U.S. 101, 115 (1989). A two-step process is required: (1) the court must "determine whether the administrator's interpretation of the plan was legally correct." *Rhorer v. Raythenon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639-40 (5th Cir. 1999). If the administrator's interpretation is legally correct, then the inquiry ends. *Id*. If not, then the court must determine whether the interpretation was an abuse of discretion. *Id*. at 640.

Assuming *arguendo* that Lineco incorrectly interpreted its plan's requirements with respect to whether or not the plaintiff should give notice that he no longer intends to seek workers' compensation after stating his intention to do so, this court's determination moves to

whether Lineco's requirement of a written statement repealing the plaintiffs' interest in filing a workers' compensation claim constitutes an abuse of discretion by the administrator. This court finds no abuse of discretion. Lineco is within reason to require written confirmation of a plan participant's disavowed interest in filing a workers' compensation claim after the administrator received contradictory notice that the same participant intended to file a workers' compensation claim. This court finds that defendant Lineco's requirement of written confirmation of plaintiff McKinney's intention not to file a workers' compensation claim is not an abuse of discretion in light of the plaintiff's verbal and written intention to do so.

## Conclusion

For the foregoing reasons, the court finds defendants L.E. Myers and Lineco are entitled to summary judgment on all claims. A separate order in accord with this opinion shall issue this day.

This, the 28th day of September, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**SENIOR U. S. DISTRICT JUDGE**